Brian D. Shapiro, Esq.
Nevada Bar No. 5772
510 S. 8th Street
Las Vegas, NV 89101
(702) 386-8600, Fax (702) 383-0994
email:  brian@brianshapirolaw.com
www.brianshapirolaw.com
www.myvegasbankruptcyattorney.com
PRO BONO Attorney for LIT VENTURES, LLC

## IN UNITED STATES  DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| LIT VENTURES, LLC <br><br>                              Plaintiff, <br><br> vs. <br><br> JOVITA CARRANZA, as ADMINISTRATOR to the UNITED STATES SMALL BUSINESS ADMINISTRATION <br>                            Defendants. | Case No.   2:20-cv-00706 |

## WRIT OF MANDAMUS OR IN THE ALTERANTIVE
## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff, LIT VENTURES, LLC  ("**Plaintiff**" and or "**VENTURES**") by and through

PRO BONO Attorney Brian D. Shapiro, Esq. of the Law Office of Brian D. Shapiro,  hereby

submits its request for a Writ of Mandamus or in the alternative a complaint for Injunctive and

Declaratory Relief against Jovita Carranza, as Administrator to the United States Small Business

Association.  The Plaintiff hereby states:

**PRELIMINARY STATEMENT**

1. As a result of the COVID-19 Virus, the Nevada economy is under economic distress. Nevada's tourism industry is shattered, and small businesses have closed.  Recent reports reflect that more than 22 million Americans have filed for unemployment since March 2020 (the "**COVID-19 Crisis**").

2. To assist small businesses, the United States Senate and the United States House of Representatives passed the Coronavirus Aid, Relief, and Economic Security Act (the "**CARES Act**").

3. The President of the United States signed the CARES Act into law.

4. In part, the CARES Act contained a provision authorizing $10,000 emergency grants to small businesses within 3 days of application.

5. This is a request for writ of mandamus or alternatively an action for injunctive and declaratory relief to prevent the United States Small Business Administration ( "**SBA**") from violating the CARES Act by adding additional criteria and/or restrictions, including but not limited to continuing to ignore the law within the CARES Act and failing to provide the emergency grant.

**JURISDICTION AND VENUE**

6. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 702.

7. Venue lies in this district under 28 U.S.C. §1391 (a)(2); (b)(2).

**THE PARTIES**

8. The Plaintiff is a Nevada Limited Liability Company.

9. The SBA is an agency of the United States Government.  Defendant  Jovita Carranza is named solely in her capacity as Administrator of the SBA.

2

**FACTUAL ALLEGATIONS**

10. On March 13, 2020, Donald J. Trump, President of the United States declared a nationwide emergency pursuant to Sec. 501(6) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. 5121-5207.

11. The World Health Organization (WHO) and United States Centers for Disease Control and Prevention (CDC) have advised that there is a correlation between density of persons gathered and the risk of transmission of COVID-19.

12. Close proximity to other persons is currently contraindicated by public health and medical best practices to combat COVID-19.

13. Recreational social gatherings unnecessarily extend periods of interpersonal contact and promulgates spread of COVID-19.

14. The rate of community spread of COVID-19 can only be reduced by minimizing contact between infected persons and non-infected persons.

15. Public health experts and epidemiologists indicate that COVID-19 may spread from infected persons to non-infected persons prior to the expression of symptoms in the infected person.

16. Immediate containment of the spread of COVID-19 is vital to protect the Health and Safety of the Nevada public.

17. On March 17, 2020, Steve Sisolak, Governor of Nevada (the "**Nevada Governor**"), issued a Declaration of Emergency to facilitate the State's response to the COVID-19 pandemic ("**March 17 Declaration**").

18. The March 17 Declaration directed Nevadans to implement physical distancing measures to minimize opportunities for the disease to spread from infected persons to non-infected persons.

19. On March 20, 2020, the Nevada Governor issued a directive and ordered the closure of all non-essential businesses, and restricted the activities of essential businesses to reduce

opportunities for interpersonal contact whereby the novel coronavirus that causes COVID-19 may be spread from infected persons to non-infected persons.

20. On March 20, 2020, the Department of Public Safety promulgated emergency regulations defining essential and non-essential businesses, specifically including Essential Healthcare operations and Essential Infrastructure operations.

21. On March 20, 2020, U.S. Senator from Nevada Catherine Cortez Masto stated, "Nevada's small businesses need relief from the economic effect of the coronavirus pandemic, and they need it now."  (https://www.cortezmasto.senate.gov/news/press-releases/cortez-masto-menendez-introduce-bill-to-provide-relief-to-small-businesses-suffering-from-economic-fallout-due-to-covid-19-outbreak)

22. On March 24, 2020, the Nevada Governor issued a directive to facilitate the State's response to the COVID-19 pandemic and ordered Nevadans to cease congregating in public spaces.

23. On March 27, 2020, Donald J. Trump, President of the United States (the "President") signed into law H.R. 748, the CARES Act.

24. At the signing of the CARES Act, the President stated that the CARES Act "provides for direct payments to individuals and unprecedented support to small businesses.  We're going to keep our small businesses strong and our big businesses strong.  And that's keeping our country strong and our jobs strong."

25. At the signing of the CARES Act, Leader McCarthy stated "the small businesses will be able to hire their employees back.  That is a grant; you don't have to borrow from that place.  The other businesses get a retention to keep your employees on.  This has something for everything."

26. At the signing of the CARES Act, Secretary Mnuchin stated "So, at Treasury, as I've said, we are committed to move forward quickly, and we're going to get money in people's pockets quickly."

27. At the signing of the CARES Act, Secretary Scalia stated "I think even more important, it includes $350 billion in loans for small business, but it's structured in a way to incentivize them to keep their workers on payroll so that those loans could be forgiven at the end of the period."

28. At the signing of the CARES Act, Representative Chabot stated "[o]n behalf of small businesses, they're the backbone of the American economy.  About half the people that work in America work for a small business, and they're hurting out there right now.  I'm from Ohio.  I'm the ranking member of the House Small Business Committee.  And back there, nonessential small businesses are shut down.  Without this legislation, it's questionable whether they would reopen.  Because of this legislation, they now have a great chance of that.  And those people that work for small businesses, who are shuttered now, will be paid.  That's really important."

29. On March 27, 2020, the SBA issued the following statement, "President Trump acted swiftly and in a bipartisan manner to support our nation's 30 million small businesses, which employ nearly half of the nation's workforce. Under the CARES Act, the President took historic action, making available hundreds of billions of dollars in an expedited manner to provide immediate financial relief for small business owners across the country. Our small businesses are the economic engines of their communities, and the SBA is ready to provide them with the support they need to remain open and keep their workers employed. With our whole-of-government approach led by the President, we are providing small businesses with the resources they need to get them through this unprecedented time." (https://www.sba.gov/about-sba/sba-newsroom/press-releases-media-advisories/cares-act-statement-sba-administrator-jovita-carranza)

30. On March 30, 2020, U.S. Senator from Nevada Jacky Rosen who helped pass into law the CARES Act stated in a press release: "[t]housands of Nevada's small businesses and their hard-working employees are struggling as a result of the uncertainty that the coronavirus pandemic has unleashed around the world. Helping our small business community

navigate this difficult time will be paramount for helping protect the health of our state's economy in the long run.  My team is taking steps to help Nevada small businesses understand the much-needed resources and federal support that is currently available to them, including the new loan and grant programs created by the CARES Act. I encourage Nevadans to reach out to my office, and I will continue fighting in Congress to ensure that our state's small businesses owners, entrepreneurs, and the people they employ have the resources they need." (https://foxreno.com/news/coronavirus/online-resource-portal-made-available-to-nevada-small-businesses-affected-by-covid-19).

31. On April 1, 2020, David Hincapie, who is an Economic Development Specialist for the SBA, indicated in part during a webinar (https://www.youtube.com/watch?v=9KjJCHcfpWg&feature=youtu.be) that:

- it takes approximately 30-35 days for the actual loan to be approved and that is why the CARES Act has a $10,000 advance.

- If you make the request for the $10,000 advance, you will get the $10,000.

- In principal it is supposed to be 3 days . . . . but wanted to warn applicants of the practical realities … in that this is an on-line application you are going to put it in, hit submit and then it goes into a queue, then it will have to get looked at by someone and they are going to do the initial check on documents and that it has all of the information.

- Assuming the SBA has all the information then the SBA continues the processing for the loan decision, but the SBA sends out the $10,000 advance.  The intent is to send it out as quickly as possible so that you get the $10,000 right away.

32. On April 2, 2020, Senate Committee on Small Business & Entrepreneurship Ranking Member Ben Cardin (D-Md.), Senate Democratic Leader Chuck Schumer (D-N.Y.), Senator Bernie Sanders (I-Vt.), and Senator Chris Coons (D-Del.) corresponded with SBA Administrator Jovita Carranza, stating in part as follows:

- Call for swift implementation of the Small Business Administration's (SBA) critical programs to help the nation's small businesses and nonprofits stay afloat during this unprecedented crisis. COVID-19 has wreaked havoc on employers and their workers across every industry and in every corner of the nation. So many of our small businesses operate at close margins and have limited ability to absorb the kind of significant hit to revenues that this pandemic has caused. As we conveyed, and as we know you understand, a swift implementation is required of the small business assistance Congress included in the Coronavirus Aid, Relief, and Economic Security Act (the CARES Act).

- In follow-up to our conversation, we wanted to further reiterate our urgent request for the release of guidance that both reflects Congress' intent in the CARES Act and that offers clarity and certainty to small businesses and nonprofits on how they can receive timely assistance from the SBA. Included below is a list of priority issues we discussed for consideration as SBA develops guidance.

- Emergency Economic Injury Grant  - The CARES Act included a requirement that a $10,000 grant be awarded within 3 days of an application to the SBA's Economic Injury Disaster Loan program to help cover operating expenses while waiting for the loan processing. Are SBA staff prepared to fulfill this requirement?

33. On April 3, 2020, U.S. Senator from Nevada Catherine Cortez Masto stated in part: "[s]mall business owners who've been affected by the coronavirus crisis can also take advantage of billions in Small Business Administration disaster loans that Congress has made available to reduce the economic impact on businesses—and this includes nonprofits. The CARES Act also allows $10,000 emergency advances to small business and nonprofits applying for SBA economic injury disaster loans ("**EIDL**")."

34. On April 7, 2020, House Small Business Committee Chairwoman, the Honorable Nydia M. Velazquez (NY) corresponded with SBA Administrator Jovita Carranza and Secretary Mnuchin in which she stated in part as follows:

7

- The CARES Act also created a new, immediate disaster grant at SBA.  Under the current economic injury disaster loan (EIDL) program, these grants were designed and intended to deliver quick infusion of capital, based simply on applicants self-certifying they are eligible.

- It does not appear that these programs are being implemented as Congress intended.

  (https://smallbusiness.house.gov/uploadedfiles/velazquez_oversight_letter_to_sba_and_treasury.pdf)

35. On April 8, 2020, the Wall Street Journal reported that

- Congress directed the Small Business Administration last month to provide grants of up to $10,000 to businesses within three days of their application to the SBA's Economic Injury Disaster Loan program.

- Since then, many businesses have applied for the emergency grants, according to small business advocates—and so far those applicants appear to be still waiting for the money.

- Business applicants say they have also been confused by changing statements from the SBA on when money will be available and the amount.

- Over the past week, the SBA has repeatedly changed the time frame for the payment of a loan advance—from three days and "within days" to "a week to 10 days," according to its website and regional offices' webinars.

- However, SBA regional officials have said in recent days the amount would depend on the size of the business's operating expenses. A document posted as of Monday evening on its Massachusetts district office's website indicated the amount would be $1,000 per employee up to a maximum of $10,000.

36. On April 8, 2020, Congressman Theodore E. Deutch from Florida,  corresponded with SBA Administrator Jovita Carranza of the SBA, in which he stated in part as follows:

- As you are aware, the CARES Act permits small businesses that apply for an EIDL to request an immediate advancement of $10,000 that is distributed to the business within three days of submitting an application. The three-day requirement is a provision – Section 1110(e)(1) - in the CARES Act that is now law.

- The intent of the three-day provision is to provide a critical source of funding to bridge the time between a small business submitting an EIDL application and the business receiving approval of their loan application. Small businesses that are applying for the EIDL and also requesting an immediate $10,000 within three days of submitting their application are in dire financial need. The economic impacts of the coronavirus pandemic are making it impossible for many small businesses to keep their employees on the payroll, to make rent and mortgage payments, and meet their basic business needs. Receiving the $10,000 payment can keep a business from permanently closing.

- I strongly urge your Agency to quickly provide small businesses requesting the $10,000 with the funding they need as they wait for their EIDL applications to be resolved. This $10,000 is a critical funding bridge for small businesses in the present economic climate. Indeed, Congress has required in law that this funding be provided within three days of the request.

(https://teddeutch.house.gov/uploadedfiles/sba_eidl_letter.pdf)

37. On April 9, 2020, United States Senators, including Ron Wyden (KS), Chris Van Hollen (KS), Tammy Duckworth (IL), Mazie K. Hirono (HI), Bernard Sanders (VT), Christopher S. Murphy (CT), Dianne Feinstein (CA), Jack Reed (RI), Catherine Cortez Masto (NV), Sheldon Whitehouse (NY), Tina Smith (NM), Edward J. Markey (MA), Jacky Rosen (NV), Jeffrey A. Merkley (OR), Brian Schatz (MI), Tammy Baldwin (WI), Tim Kaine (MN), Amy Klobuchar (MN) and Doug Jones (AL), corresponded with SBA Administrator Jovita Carranza, stating in part as follows:

- The COVID-19 pandemic and related mitigation efforts have crippled small businesses, causing mass layoffs and closures nationwide. Small businesses are the backbone of the U.S. economy, and Congress acted in overwhelmingly bipartisan fashion to pass the Coronavirus Aid, Relief,  and Economic Security (CARES) Act. Among other things, the CARES Act created EEIGs to provide an emergency advance to small businesses and private non-profits, among other entities, harmed by COVID-19 within three days of the entity applying for an SBA EIDL. The EIDL and associated EEIG provide necessary relief to these businesses and organizations during this unprecedented time.

- At the time, however, small businesses across the country are reporting that, although they are eligible and have applied for an EIDL and then requested the EEIG, they are not receiving the advance. Businesses are receiving conflicting guidance on the expected timing for receiving these critical funds, and many businesses cannot afford to wait as they try to keep their employees on payroll and pay their rent.
(https://www.wyden.senate.gov/imo/media/doc/040920%20Wyden%20Led%20Letter%20to%20SBA%20re%20EIDLs%20and%20EEIGs.pdf)

38. The CARES Act contains a provision for the issuance of an emergency grant to small businesses by application for an EIDL ("**Emergency Grant**").

39. The CARES Act provides that the SBA is the agency in charge of the EIDL and Emergency Grant.

40. The CARES Act contains a provision under Section 1114 entitled Emergency Rulemaking Authority, that state:  "[n]ot later than 15 days after the date of enactment of this Act, the Administrator shall issue regulations to carry out this title and the amendments made by this title without regard to the notice requirements under section 553(b) of title 5, United States Code."

41. In conformance with the CARES Act, on April 2, 2020, the SBA issued an Interim Final Rule (to be published in the Federal Register) pertaining to the CARES Act.  This interim rule contains no provision as to the Emergency Grant.

42. In conformance with the CARES Act, on April 3, 2020, the SBA issued another Interim Final Rule (to be published in the Federal Register) stating in part that the affiliation rules do not apply to faith-based organizations.  This interim rule contains no provision as to the Emergency Grant.

43. The SBA, in conformance with the CARES Act, has not issued any regulations that applies to the Emergency Grant.

44. The CARES Act provides that a small business may request the SBA to provide the Emergency Grant.

45. The amount of the Emergency Grant requested by an applicant shall be not more than $10,000.00.

46. To qualify for the Emergency Grant, a small business must apply for an EIDL under section (7)(b)(2) of the Small Business Act (15 U.S.C. 636(b)(2)).  ("**Application**").

47. In such Application, the small business may request the Emergency Grant.

48. The SBA, subject to verification of the applicant, is to provide the amount requested to such applicant within **3 days after the SBA receives the Application from the applicant**. (emphasis added).

49. The SBA shall verify that the applicant is an eligible entity.

50. The SBA shall verify that an applicant is an eligible entity by accepting a self-certification from the applicant under penalty of perjury pursuant to section 1746 of title 28 United States Code. ("**Self-Certification**").

51. The Emergency Grant is not conditioned upon a successful Application rather an applicant shall not be required to repay any amounts of an Emergency Grant even if subsequently denied a loan under section 7(b)(2) of the Small Business Act 15 (15 U.S.C. 636(b)(2)).

52. On or about March 29, 2020, the SBA provided a streamlined process for an applicant to apply for an EIDL loan and Emergency Grant.  ("**Streamlined Process**").

53. The Streamlined Process requirements as stated on the SBA's covid19.relief.sba.gov website (as of April 3, 2020) states:

- SBA is collecting the requested information in order to make a loan under SBA's Economic Injury Disaster Loan Program to the qualified entities listed in this application that are impacted by the Coronavirus (COVID-19).

- The information will be used in determining whether the applicant is eligible for an economic injury loan. If you do not submit all the information requested, your loan cannot be fully processed.

- The Applicant understands that the SBA is relying upon the self-certifications contained in this application to verify that the Applicant is an eligible entity to receive the advance, and that the Applicant is providing this self-certification under penalty of perjury pursuant to 28 U.S.C. 1746 for verification purposes.

- The estimated time for completing this entire application is two hours and ten minutes, although you may not need to complete all parts. You are not required to

12

respond to this collection of information unless it displays a currently valid OMB approval number.

54. As of April 4, 2020, the SBA on its web site (https://www.sba.gov/funding-programs/loans/coronavirus-relief-options/economic-injury-disaster-loan-emergency-advance) states:

- In response to the Coronavirus (COVID-19) pandemic, small business owners in all U.S. states, Washington D.C., and territories are eligible to apply for an Economic Injury Disaster Loan advance of up to $10,000. This advance will provide economic relief to businesses that are currently experiencing a temporary loss of revenue. **Funds will be made available following a successful application**. This loan advance will not have to be repaid. (emphasis added).

- The Economic Injury Disaster Loan advance funds will be **made available within days of a successful application**, and this loan advance will not have to be repaid. (emphasis added).

55. On April 6, 2020, the SBA, by and through the Massachusetts District Office, sent a bulletin at 10:12 A.M. EDT that stated "EIDL Loan advances will start to be distributed this week.  **$1000 per employee** up to $10,000 max". (emphasis added). (https://content.govdelivery.com/accounts/USSBA/bulletins/284f240).

56. On April 7, 2020 Regional Administrator Region 4 Ashley Bell ("**Mr. Bell**") appeared on the Clark Howard Show ("**Show**").  Mr. Bell was appointed to serve as Regional Administrator for the SBA for Region IV and has oversight of over $5 billion SBA backed lending .  On the Show, Mr. Bell indicated

- that it is the goal of the Emergency Grant to keep people on payroll

- in order to obtain the $10,000 Emergency Grant, you need to apply for an EIDL

- in order to obtain the $10,000 Emergency Grant, you must have 10 employees on payroll

- if you have less than 10 employees then you will receive a pro rata amount at a rate of $1000 per employee

-  a business will get the Emergency Grant in approximately 72 hours.

- when asked if you have a one-person company then you get a $1,000 grant, the response was more or less.  Mr. Bell then stated that you must meet the criteria in the **spirit of the CARES Act.**   (emphasis added).

(https://clark.com/podcasts/4-7-20-clark-interviews-sba-rep-unemployment-relief-updates-free-mental-health-resources-getting-mortgage-relief/ (beginning at approximately the 12:34 mark).

57. On April 13, 2020, the SBA sent an email to  VENTURES and to the majority of applicants which stated in part:

- On March 29, 2020, following the passage of the CARES Act, the SBA provided small business owners and non-profits impacted by COVID-19 with the opportunity to obtain up to a $10,000 Advance on their Economic Injury Disaster Loan (EIDL).

- The Advance is available as part of the full EIDL application and will be transferred into the account you provide shortly after your application is submitted.

- **To ensure that the greatest number of applicants can receive assistance during this challenging time, the amount of your Advance will be determined by the number of your pre-disaster (i.e., as of January 31, 2020) employees. The**

14

**Advance will provide $1,000 per employee up to a maximum of $10,000.**

(emphasis in original)

58. Despite the SBA's assertion, Section 110 (1)(e)(4) of the CARES Act, provides that the Emergency Grant can be utilized for the following including:

- providing paid sick leave to employees unable to work due to the direct effect of the COVID–19;

- maintaining payroll to retain employees during business disruptions or substantial slowdowns;

- meeting increased costs to obtain materials unavailable from the applicant's original source due to interrupted supply chains;

- making rent or mortgage payments; and

- repaying obligations that cannot be met due to revenue losses.

59. Despite the SBA's assertion, there are no rules nor law that permits the SBA to restrict the Emergency Grant to $1,000.00 per employee.

60. VENTURES is authorized to do business within the State of Nevada.

61. On or about March 31, 2020, VENTURES became aware that the SBA was providing Economic Injury Disaster Loans and 3-day Emergency Grants.

62. Under Section 1110(a)(2)(B) of the CARES Act, VENTURES is an eligible entity ("**Eligible Entity**").

63. As an Eligible Entity, VENTURES was entitled to apply for an EIDL under the CARES Act

64. On or about March 31, 2020, VENTURES applied for the EIDL per the Streamlined Process ("**VENTURES' Application**").

65. VENTURES' Application requested an advance of $10,000.00.

66. VENTURES' Application contained a self-certification under penalty of perjury pursuant to 1746 of title 28 United States Code.

67. On or about March 31, 2020, the Administrator confirmed that VENUTRES' Application was submitted to the SBA by providing it with an application number and advising it to print out such number or write it down.

68. On March 31, 2020, pursuant to the SBA's instructions, VENTURES saved a copy of the web page with the application number.

69. On March 31, 2020, through the Streamlined Process, the Administrator and/or her authorized agents received VENTURES' Application.

70. More than 3 days have elapsed since the Administrator has received VENTURES' Application.

71. VENTURES has fully complied with the request for the Emergency Grant.

72. The SBA, in violation of the CARES Act, has not complied with VENTURES' Emergency Grant request.

73. In contravention of the CARES Act, the SBA has instituted a policy that the Emergency Grant shall only be made available following a successful application.

74. The CARES Act does not contain a provision that the Emergency Grant requires a successful application.

75. In contravention of the CARES Act, the SBA has instituted a policy that the Emergency Grant shall only be made available on a basis of $1000 per employee.

76. The CARES Act does not contain a provision that the Emergency Grant shall be based upon the number of employees.

77. The SBA's policy on restricting the Emergency Grant is in violation and in contravention of the law.

78. The SBA is violating the clear directive of the CARES Act and thus exceeding the SBA's authority.

79. As a result of the SBA's unlawful actions, small businesses in Nevada and within the United States, including the Plaintiff,  are not receiving the Emergency Grant that they would otherwise be entitled to receive under the CARES Act.

80. The SBA's decision to implement procedures in contravention of the CARES Act are arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law.

**FIRST CAUSE OF ACTION**

**(WRIT OF MANDAMUS)**

81. VENTURES incorporates by reference the statements contained within paragraphs 1-80 herein.

82. The Court may issue a writ of mandamus in order to compel the performance of a non-discretionary duty.

83. The relief requested involves the traditional enforcement of a legal duty by recalcitrant public officials.

84. The plain language of the CARES Act as it applies to Emergency Grants imposes a non-discretionary duty to provide an Emergency Grant to an applicant in any such amount requested, up to $10,000.00, within 3 days of an application.

85. The congressional intent of such requirement has been expressed by numerous members of both the House of Representatives and the Senate.

86. Despite such plain language and congressional intent, the SBA is intentionally and maliciously violating the CARES Act by ignoring such law and by imposing additional restrictions and procedures that are not contained within the CARES Act.

87. Specifically, the SBA has imposed a procedure of (1) not providing the Emergency Grant within 3 days of application; (2) have required a successful application; and (3) has limited the amount to $1,000 per employee.

88. VENTURES has requested the $10,000 Emergency Grant provided for in the EIDL Streamlined Procedure.

89. VENTURES has not been provided the $10,000.00 Emergency Grant.

90. VENTURES has no other legal remedy other than a Writ of Mandamus.

91. As there is no adequate remedy at law to cure the SBA's failure to comply with the CARES Act, mandamus is warranted.

## ALETERNATIVE, SECOND CAUSE OF ACTION

## (INJUNCTION)

92. VENTURES incorporates by reference the statements contained within paragraphs 1-91 herein.

93. Under 5 U.S.C. §702, VENTURES is defined as a person suffering a legal wrong because of the SBA's action and is being adversely affected and aggrieved by the SBA's action and/or in action.

94. Under 5 U.S.C §706, this Court may compel the SBA to conform to the CARES Act as applicable to Emergency Grants.

95. Under 5 U.S.C §706, this Court may determine that the SBA's actions and/or inactions are in violation of the law.

96. VENTURES is also entitled to an injunction prohibiting the SBA from creating internal guidelines which violate the CARES Act as it applies to the Emergency Grant.

## ALETRNATIVE, THIRD CAUSE OF ACTION

## (DECLARATORY RELIEF)

97. VENTURES incorporates by reference the statements contained within paragraphs 1-96 herein.

98. Under 5 U.S.C §706, this Court may determine that the SBA's actions and/or inactions are in violation of the law.

99. VENTURES is also entitled to declaratory relief from this Court in the form of an order determining that the SBA's actions and/or inactions as it applies to the Emergency Grant are in violation of the law.

WHEREAS, the Plaintiff requests this Court:

1. Issue a writ of mandamus to compel the SBA from its unlawfully withheld or unreasonably delayed actions in complying the CARES Act as it applies to the $10,000 Emergency Grant.

2. In conformance with 5 U.S.C. 706(2)(A), (B), (C), and (D) hold unlawful and set aside the SBA's actions as to the CARES Act as it applies to the $10,000 Emergency Grant

3. Issue an injunction barring the SBA from violating the CARES Act and requiring the SBA to comply with the 3-day deadline to provide the $10,000 Emergency Grant.

4.   Issue an injunction barring the SBA from requiring additional conditions and/or restrictions to obtain an Emergency Grant, including but not limited to submitting a successful application and having 10 employees.

5.   Declaratory Relief in the form of holding as unlawful and setting aside the SBA's actions as to the CARES Act as it applies to the $10,000 Emergency Grant.

6.   Require the SBA to provide VENTURES with the $10,000 Emergency Grant.

7.   Provide for expeditious proceedings in this action.

8.   Award costs and reasonable attorney fees in this action and

9.   Grant such other relief as this Court may deem just and proper.

DATED          4-16-2020                    */s/ Brian D. Shapiro, Esq.*

Brian D. Shapiro, Esq.
Nevada Bar No. 5772
LAW OFFICE OF BRIAN D. SHAPIRO, LLC
510 S. 8th Street
Las Vegas, NV 89101
email:  brian@brianshapirolaw.com
www.brianshapirolaw.com
www.myvegasbankruptcyattorney.com
(702) 386-8600, Fax (702) 383-0994
PRO BONO Attorney for LIT VENTURES, LLC