NICHOLAS A. TRUTANICH
United States Attorney
District of Nevada
Nevada Bar No. 13644

TROY K. FLAKE
Assistant United States Attorney
PATRICK A. ROSE
Assistant United States Attorney
Nevada Bar No. 5109
501 Las Vegas Blvd. So., Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
Patrick.Rose@usdoj.gov

*Attorneys for Federal Defendant*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| Lit Ventures, LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Jovita Carranza, as Administrator to the United States Small Business Administration,<br><br>　　　　　Defendant. | Case No. 2:20-cv-00706-JAD-DJA<br><br>**Federal Defendant's Opposition to Plaintiff's Emergency Motion** |

　　Federal Defendant, Jovita Carranza, in her official capacity as the Administrator of the U.S. Small Business Administration (the "SBA Administrator"), opposes Plaintiff's emergency motion (ECF No. 6) ("Motion"), based on following Memorandum of Points and Authorities, along with all papers and pleadings on file.

　　Respectfully submitted this 29th day of April 2020.

　　　　　　　　　　　　　　　　　　NICHOLAS A. TRUTANICH
　　　　　　　　　　　　　　　　　　United States Attorney

　　　　　　　　　　　　　　　　　　 */s/ Patrick A. Rose*
　　　　　　　　　　　　　　　　　　TROY K. FLAKE
　　　　　　　　　　　　　　　　　　Assistant United States Attorney
　　　　　　　　　　　　　　　　　　PATRICK A. ROSE
　　　　　　　　　　　　　　　　　　Assistant United States Attorney

**Memorandum of Points and Authorities**

### I. Introduction

Under the Coronavirus Aid, Relief, and Economic Stimulus ("CARES") Act, Pub. L. 116-136, 134 Stat. 281, the Small Business Administration ("SBA") has provided emergency grants, known as "Advances," to small businesses by calculating $1,000 per employee, up to $10,000 in total. Plaintiff—a small business employing only its owner—nonetheless claims it is entitled to the maximum emergency Advance of $10,000 and seeks to compel payment through the rarely invoked Mandamus Act and a disfavored mandatory injunction. But Plaintiff cannot meet the high standards demanded of such extraordinary relief. In accordance with her discretion, and in effort to stretch Advance dollars across more small businesses and employees throughout the country, the SBA Administrator has disbursed Advances to small businesses based on a calculation of $1,000 per employee, not to exceed $10,000 in total. *See* Ex. 1 Perriello Decl. ¶¶ 2-4 and Exhibit A thereto; Ex. 2 (table of Advances, as of 4/24/2020) (available at https://www.sba.gov/sites/default/files/2020-04/EIDL%20COVID-19%20Advance%204.24.20.pdf[1]; *see also* Plf's Mot., Ex. 2. The SBA Administrator does not have a mandatory, ministerial duty to disburse to Plaintiff (and all applicants) the maximum amount of an Advance, $10,000, irrespective of factors such as the number of employees.[2]

The Court should deny Plaintiff's motion because Plaintiff has not established a plain, ministerial duty owed by the SBA Administrator, a likelihood of success on the merits, irreparable harm, or the other elements of its causes of action. Moreover, under any

---

[1] The Court can take judicial notice of public information available on government websites. *See Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 999 (9th Cir. 2010).

[2] Plaintiff's application, which was in process when this case was filed, is now being held in abeyance pending the outcome of a referral by the SBA's Office of General Counsel ("OGC") to SBA's Office of Inspector General, based on contradictory sworn statements by Plaintiff's owner. Plaintiff owner stated in the loan and Advance application that Plaintiff had 12 employees; Plaintiff's owner stated in his court-filed declaration that he is the sole employee of Plaintiff.

of its causes of action, Plaintiff seeks an extraordinary remedy, and the Court has discretion to deny it.

## II. Factual Background

**A. The Small Business Administration**

The declared policy of the Government under the Small Business Act, 15 U.S.C. § 631 et seq., is to "aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns," in order to preserve the system of free competitive enterprise that is "essential" to the economic well-being and security of the Nation. 15 U.S.C. § 631(a). To promote that important national objective, Congress created the SBA, under the management of a single Administrator, *id*. § 633(a), (b)(1), who is given "extraordinarily broad powers" under section 7(a) of the Act, 15 U.S.C. § 636(a), to provide a wide variety of technical, managerial, and financial assistance to small-business concerns. *See SBA v. McClellan*, 364 U.S. 446, 447 (1960); *see generally* 15 U.S.C. § 636(a) (describing numerous varieties of general small-business loans the Administrator is "authorized" and "empowered" to make); 13 C.F.R. § 120.1. In the performance of these authorized functions, the SBA Administrator is further empowered to "make such rules and regulations as [she] deems necessary to carry out the authority vested in [her]," and in addition to "take any and all actions ... [that] [she] determines ... are necessary or desirable in making ... loans." 15 U.S.C. § 634(b)(6), (7).

Under the terms of the SBA Act, financial assistance to a small business under section 7(a) may take the form of a direct loan by SBA, an immediate participation (joint) loan with a lender, or a deferred participation (guaranteed) loan initiated by a lender but a portion of which the SBA will purchase from the lender in the event of a borrower default. 13 C.F.R. § 120.2(a); *see Valley Nat'l Bank v. Abdnor*, 918 F.2d 128, 129 (10th Cir. 1990); *California Pac. Bank v. SBA*, 557 F.2d 218, 219 (9th Cir. 1977). The SBA Administrator also has authority to administer an Economic Injury Disaster Loan Program ("EIDL"). *See* 15 U.S.C. 636(b), (c), (f ); 13 C.F.R. § 123.300 *et seq*.; 61 FR 3304 (Jan. 31, 1996), *as amended*;

*see also, e.g., see also Dubrow v. SBA*, 345 F. Supp. 4 (C.D. Cal. 1972) (discussing SBA disaster loans in response to an earthquake).

**B.  The CARES Act**

On March 27, 2020, President Trump signed the CARES Act into law, which Congress passed to provide an unprecedented package of emergency economic assistance and other support to help individuals, families, businesses, and health-care providers cope with the enormous economic and public health crises triggered by the worldwide coronavirus (COVID-19) pandemic. *See Profiles, Inc. v. Bank of Am. Corp.*, 2020 WL 1849710, at *1 (D. Md. Apr. 13, 2020) (discussing "unprecedented disruptions" of the coronavirus (COVID-19) pandemic and the emergency response of the CARES Act). The CARES Act amended section 7(a) of the Small Business Act and provided new measures to address the COVID-19 crisis including Paycheck Protection Program loans, SBA Express Bridge Loans, SBA Debt Relief, and EIDL Advances. *See* https://www.sba.gov/funding-programs/loans/coronavirus-relief-options; *see also* CARES Act § 1110 (EIDL Advances); Ex. 2 (table of EIDL Advances, as of 4/24/2020) (available at https://www.sba.gov/sites/default/files/2020-04/EIDL%20COVID-19%20Advance%204.24.20.pdf.[3] Plaintiff's complaint and Motion concern an EIDL Advance.

**C.  Processing EIDL and Advance Applications**

Shortly after the president signed the CARES Act into law the SBA and a contractor prepared a computer system ("System") to process EIDL and Advance applications, and the System began processing applications on April 7, 2020, in small batches. The System ramped up to full capacity by April 16, 2020, by which time approximately 3.79 million submitted applications were awaiting processing in the System. To date, the System has received approximately 5.4 million total applications, and processed approvals for 1.6 million Advance requests. *See* Ex. 3 Wall Decl. ¶¶ 3-8.

---

[3] The Court can take judicial notice of public information available on government websites. *See Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 999 (9th Cir. 2010).

Applicants submit applications for EIDLs at an SBA website, covid19relief.sba.gov, under penalty of perjury. The application includes a box to check if the applicant seeks an Advance. The System houses incoming applications and processes those applications on a first-in, first-out basis through an analysis prescribed by SBA. This analysis includes, but is not limited to, removal of duplicate applications and identification of applications that bear certain indications of fraud. This analysis ensures that applications are complete and submitted from eligible and existing small businesses. For example, without doing this analysis, the SBA would be in the position of approving payment of Advances multiple times to entities that submitted multiple applications, or paying to applications submitted in the names of deceased individuals. *See* Wall Decl. ¶¶ 4-6 and Exhibit A thereto (sample copy of online application screens).

The System can process up to one or two applications per second. However, even at this rapid pace, the System can only process a certain number of applications in a day. Every day, seven days a week, the system sends lists of approved Advance applications to SBA's Office of Chief Financial Officer ("CFO") for directing disbursement of those Advances. Since the System began processing at full capacity, April 16, 2020, it has processed and sent an average of 109,785 applications per day to the CFO's office, with the exception of a brief interruption for approximately two days for technical reasons. *See* Wall Decl. ¶¶ 9-10; *see generally* Perriello Decl. The CFO's office coordinates payment with and via the Department of Treasury and the automated clearinghouse network. *See* Perriello Decl. ¶¶ 2, 5-8. Because of the extraordinary volume of applications submitted prior to and since the date that the System began processing EIDL and Advance applications, the System will take several more weeks to process the backlog of applications, despite spending approximately one second processing each application, *see* Wall Decl. ¶ 11. Further, the SBA expects more applications.

**D.  Plaintiff's Application**

On April 27, 2020, the CFO's Office received verification and approval for an EIDL Advance for Plaintiff Lit Ventures, LLC's application. However, at the request of the

5

SBA's Office of General Counsel ("OGC"), the CFO's Office is currently holding the instruction for disbursement in abeyance pending the outcome of a referral that OGC has made to the SBA's Office of Inspector General, which is based on inconsistent and possibly fraudulent sworn statements of Lit Ventures' owner. Specifically, Lit Venture's owner stated in the April 3, 2020, EIDL and Advance application that Lit Ventures has 12 employees, but in an April 24, 2020, court-filed declaration, the owner stated that he is the sole employee of Lit Ventures, LLC. *See Wall Decl.* ¶ 12*;* Perriello Decl. ¶ 9; Plf's Mot., Pehrson Decl. ¶ 2, ECF No. 6-2.

### III. Legal Standards

**A.     Mandamus**

The Mandamus Act, 28 U.S.C. § 1361, provides "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. This statute does not waive the sovereign immunity of the United States. *Pit River Home & Agr. Co-Op Ass'n v. United States*, 30 F.3d 1088, 1098 n.5 (9th Cir. 1994).

"Mandamus writs, as extraordinary remedies, are appropriate only when a federal officer, employee, or agency owes a nondiscretionary duty to the plaintiff that is so plainly prescribed as to be free from doubt." *Macheret v. Chertoff*, 2008 WL 763230, at *1 (D. Nev. Mar. 19, 2008) (citing *Stang v. IRS*, 788 F.2d 564, 565 (9th Cir.1986)); 28 U.S.C. § 1361. However, even if all elements are satisfied, the trial court retains discretion as to whether to order mandamus relief. *Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 505 (9th Cir. 1997).

Similarly, the Administrative Procedures Act ("APA") authorizes suit to compel an agency to take a discrete agency action that it is required to take, *see Norton v. So. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004); 5 U.S.C. § 706(1). However, the APA does not provide an independent basis for federal jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 107 (1977)).

Accordingly, relief under mandamus and the APA are virtually equivalent in the context of seeking to compel agency action on a nondiscretionary duty; the Supreme Court has construed a claim seeking mandamus under 28 USC § 1361, as in essence one for relief under § 706 of the APA. *See Macheret*, 2008 WL 763230, at *2 (citing *Independence Mining Co.* 105 F.3d at 507).

## B.  Injunctive Relief

Like mandamus, "'[i]njunctive relief is 'as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Bender v. Olivieri*, 2011 WL 691317, at *5 (D. Nev. Feb. 18, 2011) (quoting *Winter v. Natural Res. Def. Council*, [555 U.S. 7,] 129 S. Ct. 365, 375–76 (2008)); *see also Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979) (a mandatory injunction, which goes beyond simply maintaining the status quo, is particularly disfavored and should not be issued unless the facts and the law clearly favor the moving party) (citations omitted). Where, as here, "the effect of a mandatory injunction is equivalent to the issuance of mandamus it is governed by similar considerations." *Fallini v. Hodel*, 783 F.2d 1343, 1345 (9th Cir. 1986) (citing *Miguel v. McCarl*, 291 U.S. 442, 452 (1934)).

## IV.  Argument

### A.  Plaintiff Has Not Demonstrated that It Is Entitled to Mandamus Relief of a $10,000 Advance.

To qualify for extraordinary mandamus relief, a litigant must demonstrate that it satisfies three requirements that courts have characterized as jurisdictional. Mandamus is available to compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available." *Kildare v. Saenz,* 325 F.3d 1078, 1084 (9th Cir. 2003) (citation omitted) "Whether each element of the three-part mandamus test is satisfied is a question of law." *See, e.g.*, *Ticheva v. Ashcroft,* 241 F. Supp. 2d 1115, 1117 (D. Nev. 2002).

"[M]andamus cannot be used to compel or control a duty which by law is given discretion." *See Macheret,* 2008 WL 763230, at *1 (citation omitted)*; see also Lowry v. Commissioner*, *Social Security Admin.*, 231 F. Supp. 2d 981, 984 (D. Ore. 2001) (mandamus may not be used to instruct an official how to exercise discretion), *aff'd*, 50 Fed. Appx. 856 (9th Cir. 2002).

The applicable provision of the CARES Act provides:

> (1) IN GENERAL.—During the covered period, an entity included for eligibility in subsection (b), including small business concerns, private nonprofit organizations, and small agricultural cooperatives, that applies for a loan under section 7(b)(2) of the Small Business Act (15 U.S.C. 636(b)(2)) in response to COVID–19 may request that the Administrator provide an advance that is, subject to paragraph (3), in the amount requested by such applicant to such applicant within 3 days after the Administrator receives an application from such applicant.
>
> (2) VERIFICATION.—Before disbursing amounts under this subsection, the Administrator shall verify that the applicant is an eligible entity by accepting a self-certification from the applicant under penalty of perjury pursuant to section 1746 of title 28 United States Code.
>
> (3) AMOUNT.—The amount of an advance provided under this subsection shall be not more than $10,000.

CARES Act § 1110(e)(1)-(3).

This language is not "so plainly prescribed as to be free from doubt" in supporting Plaintiff's position. *Macheret*, 2008 WL 763230, at *1. While the CARES Act directs the Administrator to waive some specific requirements of the Small Business Act, such as the requirement that borrowers personally guarantee loans, be in business for a certain time, and be unable to obtain credit elsewhere, *see* CARES Act § 1110(c)(1)-(3), the CARES Act does not create a mandatory, ministerial duty to disburse the ceiling amount for an Advance to every applicant irrespective of other factors. This comports with the SBA's authority under its other programs where it "has been given complete discretion to determine the amount of any loans it has authority to grant." *Gifford v. Small Bus. Admin.*, 626 F.2d 85, 87 (9th Cir. 1980) (Economic Opportunity Loans); *see also Copake Lake Dev. Admin. v. U.S. Gov't*, 490 F. Supp. 386, 389 (E.D.N.Y.1980) (citing several cases for the proposition that "the decision concerning the granting of a loan by the SBA is one firmly

8

committed to agency discretion"); *see also Dubrow v. SBA*, 345 F. Supp. 4, 8 (C.D. Cal. 1972) (where SBA required earthquake-disaster-relief-loan applications to be accompanied by report of structural engineer, court would not "substitute its opinion for that of the administrative agency.").

Indeed, the Disaster Loans Provision, which facilitates the applications for Advances under the CARES Act expressly provides that the SBA is empowered "to make such loans … as the Administration may determine to be necessary or appropriate to any small business concern … located in an area affected by a disaster." 15 U.S.C. 636(b)(2). In sum, while the CARES Act creates a new form of assistance, it does not abrogate the SBA's long-standing discretion in administering its programs.

In an effort to maximize assistance to the greatest number businesses (and thereby potentially assist more employees), the SBA Administrator determined that Advances would be awarded based on a calculation of $1,000 per employee up to the maximum amount of $10,000. *See* Perriello Decl. ¶¶ 2-4 and Exhibit A thereto; *see also* Plf's Mot., Ex. 2. That effort and criterion are not unreasonable, for two of the expressly listed purposes of such Advances are tied to employees. *See* CARES Act § 1110(e)(4)(A), (B) (use of Advance for paid sick leave for employees and payroll to retain employees). The SBA Administrator has been issuing Advances based on the calculation of $1,000 per employee. *See* Ex. 2 (showing that Advance dollars are not simply $10,000 times the number of processed applications) (available at https://www.sba.gov/document/ report--covid-19-eidl-advance-report).[4]

Plaintiff itself acknowledges the significant funding challenge, if not impossibility, of all small businesses receiving $10,000, *see* Motion at 19 n.6, but nonetheless argues that the CARES act creates a ministerial duty for the Administrator to provide it with $10,000 within 3 days. It claims that the SBA has no discretion to do otherwise and the

---

[4] The Court may take notice of public information available on government websites. *See Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 999 (9th Cir. 2010).

9

Administrator's failure to carry out this duty is so plain that this Court should order the SBA to provide it with $10,000 immediately, without any other considerations.

The CARES Act does not say this, and this is not how SBA programs operate. Congress could have easily said that Advances shall be $10,000 rather than "[t]he amount of an advance provided under this subsection shall be not more than $10,000." CARES Act § 1110(e)(3). Instead, the CARES Act plainly permits the Administrator to exercise her discretion in disbursing Advances. Similarly, Congress did not mandate disbursement in three days. It simply allowed applicants to request disbursal within three days.

Accordingly, Plaintiff fails to show that its claim is so plain and free of doubt that that the SBA Administrator has a nondiscretionary, ministerial, duty to provide it (and all other applicants) with a $10,000 Advance within three days, regardless of the number of persons employed by the business.

Furthermore, the extraordinary remedy of mandamus lies within the discretion of the trial court, even if the three elements are satisfied. *See Indep. Min. Co.* 105 F.3d 502, 505 (9th Cir. 1997) (citing *Oregon Nat. Res. Council v. Harrell*, 52 F.3d 1499, 1508 (9th Cir. 1995)). The Ninth Circuit has held that a district court appropriately denied mandamus relief when it concluded that granting relief would merely allow the petitioner to 'to jump the queue of other identically situated parties' and would therefore achieve an arbitrary result and 'encourage a barrage of mandamus actions by others.'" *Casa Colina Hosp. & Centers for Healthcare v. Wright*, 698 F. App'x 406, 407 (9th Cir. 2017) (quotations in original); s*ee also Ramtin Massoudi MD Inc. v. Azar*, 2018 WL 6004523, at *7 (C.D. Cal. July 5, 2018) (declining to award expedited adjudication of Medicare claim by ALJ because it could not order relief for all similar situated parties); *American Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016) (mandamus should not issue to allow plaintiffs to "jump the line" because it would provide relief "at the expense of other similarly situated applicants"). Thus, even if the Court were to find that Plaintiff was eligible for mandamus relief, the Court should exercise its discretion to deny such relief. Plaintiff is one of a vast number of applicants; the System is processing applications by the second; and court-intervention (in

this or similar lawsuits) will only disrupt the System and the SBA Administrator's efforts to deliver some assistance to numerous small businesses across the country. Furthermore, Plaintiff's application is pending an OGC referral and IG investigation based on the contradictory sworn statements of its owner.

**B.   Plaintiff Has Not Demonstrated that It Is Entitled to a Mandatory Injunction for a $10,000 Advance.**

A plaintiff seeking an injunction must "demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter*, 129 S. Ct. at 374). Speculative injury lacking factual allegations "does not constitute irreparable injury." *Goldie's Bookstore, Inc. v. Superior Court of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984).

For the reasons explained above, Plaintiff is not likely to succeed on the merits of its claim that it is entitled to a $10,000 Advance. Additionally, Plaintiff has not demonstrated that he likely to suffer irreparable harm in the absence of relief. Assuming *arguendo* destruction of Plaintiff's business would constitute irreparable harm, Plaintiff has not made a factual showing of such irreparable harm and that an Advance will prevent such harm. Plaintiff provides no details as to its historical and present revenues, expenses, and profits (or losses). Plaintiff provides no estimate as to the number of weeks or months it can sustain with and without an Advance.[5]

The last two factors (the balance of equities and public interest) "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The CARES Act was passed when "[t]he Executive and Legislative Branches quickly responded to the COVID-19 crisis with this virtually unanimous legislation." *Am. Ass'n of Political Consultants*

---

[5] Also of note, Plaintiff does not seek to preserve the status quo by halting federal action alleged to result in harm; Plaintiff seeks a mandatory injunction compelling federal action to address harm caused by the viral pandemic and state action that limits and restricts business operations.

*v. United States Small Bus. Admin.*, 2020 WL 1935525, at *7 (D.D.C. Apr. 21, 2020). The CARES Act EIDL provision administers relief through the SBA. Generally, SBA programs operate "with the ultimate aim not of encouraging … individual growth but rather the growth of small businesses generally." *Elk Assocs. Funding Corp. v. U.S. Small Bus. Admin.*, 858 F.Supp.2d 1, 32 & n. 29 (D.D.C. 2012) (denying TRO because irreparable harm suffered by private entity in SBA's administration of Small Business Investment Company program was outweighed by the public interest).

The public interest in a swift economic response to the COVID-19 crisis included an almost unanimous decision by Congress to provide relief through the SBA, an agency whose mission is to promote growth of all small businesses. As with other SBA programs, the Administrator is exercising discretion to award EIDL Advances in a manner that best to the COVID-19 crisis by providing proportional advances to as many small businesses as possible. While the relief petitioner seeks would undoubtedly serve its own interests, an injunction would not serve the public interest. Accordingly, neither the balance of equities, nor the public interest weigh in favor of granting the injunction.

**C.     Plaintiff Has Not Demonstrated that It Is Entitled to a $10,000 Advance under the APA.**

Among the necessary conditions to invoke the APA's waiver of sovereign immunity, a plaintiff cannot seek relief expressly or impliedly forbidden by another statute. *See Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 645 (9th Cir. 1998).

Section 634(b)(1) of the Small Business Act restricts the availability of injunctive relief against the SBA. Under that section, the SBA Administrator

> sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy; but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property[.]

15 U.S.C. § 634(b)(1).

At least two circuit courts have interpreted this section to preclude all injunctive relief against the SBA, see, e.g., *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1290 (5th Cir. 1994); *Driskill, Inc. v. Abdnor*, 901 F.2d 383, 386 (4th Cir. 1990) (explaining that "courts have no jurisdiction to award injunctive relief against the SBA"). Other courts have held that this provision protects the SBA from injunctions that would interfere with internal workings but does not bar judicial review where the agency has exceeded its authority and the remedy would not interfere with internal agency workings. *See, e.g., Ulstein Mar., Ltd. v. United States*, 833 F.2d 1052, 1056–57 (1st Cir. 1987). The Ninth Circuit has not taken a position on this issue.

Here, the requested remedy, requiring the SBA to immediately distribute $10,000 to Plaintiff, would interfere with agency operations. Specifically, it would prevent the SBA from achieving its goal of helping as many businesses and employees as possible and it would alter the Agency's ongoing application processing operation. In this specific case, it would also prevent the SBA from investigating the discrepancy between Plaintiff's application and the statement in its owner's sworn declaration. Under these circumstances, even if this Court determined that it had jurisdiction to enter an injunction, it should not do so here.

## V. Conclusion

For the reasons explained above, Plaintiff has not demonstrated entitlement to relief. Moreover, with the pandemic's unprecedented disruptions to American citizens and small businesses, and the CARES Act emergency efforts to bring some relief, Plaintiff's suit is not an appropriate vehicle to jump ahead of pending applications or "seek wholesale improvement of [the] program by court decree . . . ," *Norton*, 542 U.S. at 64. The SBA Administrator respectfully requests that the Court deny Plaintiff's Motion.

Respectfully submitted this 29th day of April 2020.

NICHOLAS A. TRUTANICH
United States Attorney

/s/ Patrick A. Rose
TROY K. FLAKE

13

Assistant United States Attorney
PATRICK A. ROSE
Assistant United States Attorney

**Certificate of Service**

I hereby certify that on April 29, 2020, the foregoing Federal Defendant's Opposition to Plaintiff's Emergency Motion was electronically filed and served on Plaintiff's counsel of record via United States District Court for the District of Nevada CM/ECF system.

/s/ Patrick A. Rose
PATRICK A. ROSE
Assistant United States Attorney
United States Attorney's Office