Brian D. Shapiro, Esq.
Nevada Bar No. 5772
510 S. 8th Street
Las Vegas, NV 89101
(702) 386-8600, Fax (702) 383-0994
email:  brian@brianshapirolaw.com
www.brianshapirolaw.com
www.myvegasbankruptcyattorney.com
PRO BONO Attorney for LIT VENTURES, LLC

**IN UNITED STATES  DISTRICT COURT
DISTRICT OF NEVADA**

| | |
|---|---|
| LIT VENTURES, LLC<br><br>                           Plaintiff,<br><br>vs.<br><br>JOVITA CARRANZA, as ADMINISTRATOR to the UNITED STATES SMALL BUSINESS ADMINISTRATION<br><br>                           Defendants. | Case No. 2:20-cv-00706-JAD-DJA |

**REPLY TO OPPOSITION TO EMERGENCY MOTION
APPLICATION  FOR WRIT OF MANDAMUS OR IN THE ALTERANTIVE
FOR A TEMPORARY RESTRAING ORDER/PRELIMINARY INJUNCTION[1]**

Plaintiff, LIT VENTURES, LLC  ("**Plaintiff**" and or "**VENTURES**") by and through PRO BONO Attorney Brian D. Shapiro, Esq. of the Law Office of Brian D. Shapiro,  hereby submits its reply to the opposition to the EMERGENCY APPLICATION for a Writ of Mandamus or in the alternative for a temporary restraining order/preliminary injunction against Jovita Carranza, as

---

[1] As apparent retaliation for filing its complaint on April 20, 2020 and the motion on April 24, 2020, the SBA, on April 27, 2020 has now "held" up VENTURES's application based upon alleged contradictory and fraudulent statements.  As stated more fully herein, such statements, although it may be inconsistent, are easily explained and are not materially relevant to the application.  See, Opposition p. 5-6, l. 27-8 [doc 15].

1

Administrator to the United States Small Business Association ("Application"). This reply is based upon the attached points and authorities.

## I. PRELIMINARY STATEMENT

1. This Application must be granted as the SBA is unequivocally violating Coronavirus Aid, Relief, and Economic Security Act (the "**CARES Act**") as it applies to the Emergency Grant process.

## II. UNDISPUTED FACTS

2. The SBA does not dispute any of the material facts asserted within the Motion. Of importance, VENTURES highlight the following undisputed facts:

   - **Congressional Intent** – The SBA does not address congressional intent. As stated within the Motion and the attachments in support, it was the Congress' intent that the CARES Act include a requirement that a $10,000 grant be awarded within 3 days of an application to the SBA's Economic Injury Disaster Loan program to help cover operating expenses while waiting for the loan processing. See generally, Motion [doc 6] p. 7-12 and applicable exhibits attached to the Declaration of Brian D. Shapiro [doc 6-2]

   - **Admissions** – The SBA does not deny its own prior admission. On April 1, 2020 the SBA admitted that pursuant to the CARES Act:

     - it takes approximately 30-35 days for the actual loan to be approved and that is why the CARES Act has a $10,000 advance.
     - If you make the request for the $10,000 advance, you will get the $10,000.
     - In principal it is supposed to be 3 days . . . . but wanted to warn applicants of the practical realities … in that this is an on-line application you are going to put it in, hit submit and then it goes into a queue, then it will have to get looked at by someone and they are going to do the initial check on documents and that it has all of the information.
     - Assuming the SBA has all the information then the SBA continues the processing for the loan decision, but the SBA sends out the $10,000 advance. **The intent is**

**to send it out as quickly as possible so that you get the $10,000 right away.**

(emphasis added).

See, Motion p. 8, l. 15-26 [doc 6]

- **Rules and Regulations** - The SBA does not dispute that it failed to promulgate any rules in accordance with Section 1114 of the CARES Act entitled Emergency Rulemaking Authority, that section stated: "[n]ot later than 15 days after the date of enactment of this Act, the Administrator shall issue regulations to carry out this title and the amendments made by this title without regard to the notice requirements under section 553(b) of title 5, United States Code."

- **Internal Regulation as to $1,000.00 per employee** – The SBA freely admits that despite not promulgating any rules in accordance with Section 1114, the $1,000.00 per employee "rule" is based upon an internal memorandum which states its based upon the "following logic" (emphasis added):

    - If number of employees is 0 then amount is $1,000
    - Otherwise if number of employees is greater than 10 then amount is $10,000
    - Otherwise amount is number of employees times $1,000

### III.   MISSTATEMENTS THAT EMERGENCY GRANTS ARE A LOAN

3. The SBA stated that Administrator is further empowered to "make such rules and regulations as [she] deems necessary to carry out the authority vested in [her]," and in addition to "take any and all actions ... [that] [she] determines ... are necessary or desirable in making ... loans." 15 U.S.C. § 634(b)(6), (7). See, Opposition [doc 15] p. 3, l. 16-19 and p. 8-9, l. 23-10.

4. The Emergency Grant is not a loan. Rather, in this extraordinary time, Congress and the President authorized an Emergency Grant to small business. This Emergency Grant is not a loan because it is not required to be paid back. Section 1110 entitled Emergency EIDL Grants states:

- (5) REPAYMENT.—An applicant **shall not be required to repay any amou**nts of an advance provided under this subsection, **even if subsequently denied a loan** under section 7(b)(2) of the Small Business Act (15 U.S.C. 636(b)(2)). (emphasis added).

IV. **MISSTATMENT AS TO PLAINTIFF'S REQUEST FOR RELIEF**

5. The SBA contends that the Plaintiff is requesting this Court to "immediately distribute $10,000 to Plaintiff". See, Opposition p. 15, l. 10-12 [doc 15].

6. As expressly stated twice within the Motion, the Plaintiff, at this time, is requesting the following relief:
    - preventing the SBA from requiring that the applicant have a "successful" application for an EIDL rather than relying upon the self-certification process contained within the CARES Act.
    - requiring the disbursement of an Emergency Grant within 3 days of receipt of the application by the SBA (the SBA receives the application immediately upon submitting the application under the Streamlined Process).
    - providing the Emergency Grant in the amount requested, up to $10,000.
    - preventing the SBA from utilizing its internal procedure of limiting the Emergency Grant based upon the number of employees.

See, Motion p. 3, l. 4-12 and p. 24, l. 14-25 [doc 6].

V. **ALLEGATIONS OF FRAUDULENT SWORN STATEMENTS**

7. The SBA is now holding hostage the disbursement to the Plaintiff based upon its contention of an inconsistent and possibly fraudulent statement. See, Opposition p. 5-6, l. 26-8 [doc 15]. The SBA appears to imply that Mr. Pehrson provided a materially false statement in its application for the Emergency Grant by stating that it had 12 employees in lieu of 1 employee.

8. Such potential retaliatory conduct is also not in conformance with the CARES Act.

4

9. The actual application has been in the hands of the SBA for approximately 25 or more days. Mr. Pehrson does not recall, nor counsel is aware as to what number of employees he placed within such application. However, it is not material to this proceeding. It is not material because (1) the application was submitted, prior to any announcement by the SBA that it was restricting the amount of the advance to the number of employees and therefore there could be no intent to defraud; (2) Mr. Pehrson has freely admitted that he utilized more than 10 independent contractors to assist in his business; (3) the streamlined application does not include a location for number of independent contractors (See, 15-4); (4) the streamlined application does not provide a definition of employees nor any assistance to differentiate between independent contractors nor employees (Id.); (5) Mr. Pehrson filled out the application without any legal advice or assistance by any professional to determine how it should be filled out, and (6) if Mr. Pehrson stated 12 employees he was likely focused upon both he and the approximately 11 other independent contractors that work at his business.

10. Focusing on this allegation is not material to the underlying application.

## VI. THE REQUEST FOR A WRIT OF MANDAMUS SHOULD BE GRANTED

11. This Court has jurisdiction under both the mandamus statute, 28 U.S.C. 1361 and the federal question statute 28 U.S.C. 1331. The Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq., does not provide an independent basis for subject matter jurisdiction. See *Califano v. Sanders*, 430 U.S. 99, 105 (1977). However, the APA provides a basis for the suit when the government unreasonably delays action or fails to act. See 5 U.S.C. §§ 555(b) and 706(1). Thus, the Plaintiff asserts a cause of action under the APA.

12. As applicable to the Mandamus request, the Parties do not appear to dispute the law.

13. Within this argument, the SBA continues to conflate loan versus grant, See, p. 8-9, l. 23-10 (citing to cases which authorizes the granting of a "loan" to agency discretion). Congress was fully aware of the difference between a loan and a grant. This is a grant not a loan. As stated within the CARES Act, Section 1110(e)(5), an applicant shall not be required to repay any amount of the grant.

5

Case 2:20-cv-00706-JAD-DJA   Document 17   Filed 04/30/20   Page 6 of 17

14. The SBA mischaracterizes the Emergency Grant process. The Emergency Grant process is simple.

- An Applicant "may request that the Administrator provide an advance that is, subject to paragraph (3)".
- Paragraph (3) provides – "The amount of an advance provided under this subsection shall be not more than $10,000."
- Before disbursing the amount, "the Administrator shall verify that the applicant is an eligible entity."
- The Administrator "shall verify that the applicant is an eligible entity by accepting a self-certification from the applicant"
- Upon "receipt" and "verification" the Administrator is to disburse "<u>in the amount requested by such applicant</u> to such applicant within 3 days after the Administrator receives an application from such applicant." (emphasis added).

15. Practically speaking, an applicant may request any amount "up to $10,000.00" and the Administrator after receipt and verification is required to disburse such amount requested to the applicant within 3 days. For instance, if an applicant only requested $2,500.00 then the Administrator may only disburse the $2,500.00. Similarly, if an applicant requested $75,000.00 then the Administrator could only distribute $10,000.00. It is only the applicant who may discretionally request less than $10,000.00. Only if an applicant requests more than $10,000.00 then the Administrator shall reduce such amount to $10,000.00. The Administrator has no discretion.

16. Here, the SBA did not permit an applicant to request an amount less than $10,000.00. Rather, the SBA's streamlined process only permitted an applicant to request $10,000.00. <u>See</u>, Doc 15-4, p. 10. Congress initially allocated 10 Billion Dollars for the Emergency Grant process. Accordingly, based upon the streamlined process, the first million small businesses that were eligible and requested the $10,000 Emergency Grant, should have received such Emergency Grant. As Congress, in the 2nd CARES Act, has allocated an additional 10 Billion Dollars for

6

the Emergency Grant Process the next million applicants should be entitled to the $10,000 Emergency Grant.[2]

17. The SBA's internal policy limiting the grant to $1,000 per employee is arbitrary, capricious, an abuse of discretion (when there is none) or otherwise not in accordance with the law.

18. First, the Emergency Grant provisions are not ambiguous. The amount to be distributed is based solely upon the request by the applicant.

19. Second, the SBA, did not promulgate within 15 days, any rules or regulations as to the Emergency Grant.

20. Third, the Kimberly S. Butler memorandum sets the stage as to the arbitrary, capricious, an abuse of discretion (when there is none) or otherwise not in accordance with the law argument. Such memorandum states such amount is based upon "the following logic". Logic is reasoning that is conducted or assessed according to strict principles of validity. The SBA's "logic" is not logical.

21. The SBA contends that this logic should not be criticized because it is based upon the two of the listed purposes of such Emergency Grant. See, Opposition, p. 9, l. 11-21. However, such logic should be criticized because not only did the SBA fail to promulgate rules and regulations as to the Emergency Grant, but the CARES Act encompasses more than the ability to pay employees. Such provision states in part:

"for any allowable purposes for a loan made under section 7(b)(2) of the Small Business Act (15 U.S.C 636(b)(2)) including –

(A) providing paid sick leave to employees unable to work due to the direct effect of the COVID–19;

---

[2] The April 25, 2020 correspondence advised the Administrator that "to prevent the Administration from once again refusing to request additional appropriations when the program is fully subscribed, SBA should notify Congress as soon as funds begin to run low rather than cut the amount small business receive." See Supplement, Doc 12 p. 6.

    (B) maintaining payroll to retain employees during business disruptions or substantial slowdowns;

    (C) meeting increased costs to obtain materials unavailable from the applicant's original source due to interrupted supply chains;

    (D) making rent or mortgage payments; and

    (E) repaying obligations that cannot be met due to revenue losses.

22. Not only has the Plaintiff criticized the SBA's logic but members of both the House and the Senate have criticized the SBA in failing small businesses as to the Emergency Grant Process. See, Congressional Correspondence Attached to the Declaration of Brian D. Shapiro in Support [doc 6-3].

23. **Mandamus Test** – There are three elements to the mandamus test. "The three elements of the mandamus test are (1) the plaintiff's claim is clear and certain; (2) the [defendant official's duty is ministerial and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available." *R.T. Vanderbilt Co v. Babbitt*, 113 F.3d 1061, 1065 n .5 (9th Cir. 1997).

24. **The Plaintiff's Claim is Clear and Certain** - Here, and as fully articulated within the Motion and this Opposition, the Plaintiff has a clear right as it falls within the "zone of interests". Courts state that a person has a clear right when he or she falls within the "zone of interests" of a particular statute. This means that the interests the Plaintiff seeks "to be protected are within those 'zone of interests' to be protected or regulated by the statute… in question*." Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 150 (1970). There is no argument that the Plaintiff is a small business and as such falls within the zone of interests as applicable to the Emergency Grant.

25. Particularity, the Plaintiff submitted its application with a self-certification and requested the Emergency Grant for $10,000. Pursuant to the Emergency Grant provision, the Administrator, presuming availability of funds, needed to verify that it was eligible (by accepting the self-

certification) and then to distribute the amount requested (here it was the $10,000 as that was the only option) and to distribute the money within 3 days.

26. On April 1, 2020 by and through its Economic Development Specialist, the SBA admitted that such payment was required to be made and the intent was to send it as quickly as possible, so you get the $10,000 right away.  <u>See</u>, Motion p. 6-7, l. 24-12 [doc 6].  The SBA does not deny nor address this admission.

27. The Congressional Intent is not disputed in that small businesses were and are in dire need of funds and the Emergency Grant process was to be utilized for that purposes.  Upon request of an applicant for an amount and upon verification of eligibility by virtue of the self-certification process, the Administrator was to disburse the amount requested up to $10,000.00 within 3 days of receipt of the application.  The Administrator has not complied and is violating the CARES Act provision as it applies to Emergency Grants.

28. **<u>The [defendant official's duty  is  ministerial and so plainly prescribed as to be free from doubt</u>**.  As applicable to the Emergency Grant process only, the Administrator's duty is ministerial and free from doubt.[3]  Except as to determine eligibility by virtue of the self-certification and to provide the Emergency Grant in the amount requested but no more than $10,000.00, there is nothing else for the Administrator to accomplish.

29. The Administrator's unlawful actions in choosing to substitute her discretion rather than Congress' intent and the clear provisions of the Emergency Grant process is a clearly arbitrary, capricious, an abuse of discretion (when there is none) and not in accordance with the law.

30.  **<u>No other adequate remedy is available</u>**.  The SBA does not dispute that no other adequate remedy is available.

31. The Parties agree that the request for this extraordinary remedy lies with this Court's discretion However, the Plaintiff is not seeking to "jump the line" at the expense of other similarly situated

---

[3] The Plaintiff concedes that as to loans, the Administrator has some discretion.  The Emergency Grant is not a loan and there is no discretion.

applicants. Rather, the Plaintiff is seeking this Court to enforce the law so that in conformance with the Emergency Grant procedure all applicants who requested the $10,000 Emergency Grant can obtain such Emergency Grant.

32. To the extent that the Plaintiff's requested relief is at all ambiguous, the Plaintiff is requesting this Court to enter a writ of mandamus to require the SBA to follow the law, enforce the Emergency Grant provision as stated within the CARES Act as well as the Congressional intent of such process so that such funds can be immediately (within 3 days of receipt) be distributed to the applicants and to prevent the SBA from enforcing its internal guidelines in restricting the grants to $1,000 per employee. There should have only been one limitation and that is when the 10 Billion Dollars of funds (now 20 Billion Dollars) have been depleted, then there are no further funds available. Of course, Congress has advised the SBA that prior to the funds being depleted to request Congress and the President to replenish such funds.

### VII. ALTERNATIELY THE REQUEST FOR A TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION SHOULD BE GRANTED

33. To obtain such relief, VENTURES must demonstrate (1) a likelihood of success on the merits; (2) likelihood of irreparable injury if preliminary relief is not granted; (3) balance of hardships; and (4) advancement of the public interest. *Winter v. N.R.D.C.*, 555 U.S. 7, 20 (2008). The Ninth Circuit has also held that the "sliding scale" approach applies to preliminary injunctions— that is, balancing the elements of the preliminary injunction test, so that a stronger showing of one element may offset a weaker showing of another—survives *Winter* and continues to be valid. *Alliance for Wild Rockies v. Cottrell*, 622 F.3d 1045, 1050 (9th Cir. 2010). "In other words, 'serious questions going to the merits,' and a hardship balance that tips sharply toward the plaintiff can support the issuance of an injunction, assuming the other two elements of the Winter test are also met.'" Id.

34. **Likelihood of Success on the Merits** – as stated in the discussion for writ of mandamus and in the original motion, this entire case revolves around the SBA creating its own internal policy to try to comply with the "spirit" of the CARES Act and what it internally believes is to "ensure that that the greatest number of applicants" receive assistance rather than just complying with the CARES Act. In conformance with 5 U.S.C. 706(2)(A), (B), (C), and (D) this Court can hold unlawful and set aside the SBA's actions as to the CARES Act as it applies to the $10,000 Emergency Grant. It is highly likely that the Plaintiff will succeed on the merits.

35. The SBA may only exercise the authority conferred upon it by statute. Under the Administrative Procedure Act, 5 U.S.C. §701 et seq., (the "APA"), courts must "hold unlawful and set aside agency action" that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. §706(2)(C). In addition, the APA provides that courts must "hold unlawful and set aside" agency action that is "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. §706(2)(A). A court's analysis of APA section 706(2)(C) "naturally begins with a delineation of the scope of the [agency's] authority and discretion" and then requires the court to determine whether the agency's action was made within the scope of that authority. *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). As described above, nothing in the CARES Act, the First or Second Interim Rule, or any other law or regulation of any kind, authorizes the SBA's use of its internal policy. It is well established that "an administrative agency must adhere to its own regulations." *Singh v. U.S. Dep't of Justice*, 461 F.3d 290, 296 (2d Cir. 2006). The SBA acted outside the scope of its statutory and regulatory authority when it implemented its internal procedures as to the amount to be provided to the applicants.

36. The SBA's implementation of the Emergency Grant procedure which ignores the law and the Congressional intent is "arbitrary, capricious, [or] an abuse of discretion" in violation of section

11

7065(2)(A) of the APA. When analyzing whether an agency's action was arbitrary or capricious, courts must determine whether "the agency has complied with the APA; specifically, whether . . . it has acted consistently with its own procedures; and whether its applications of its governing law have been reasonable." *Troy Corp. v. Browner*, 120 F.3d 277, 281 (D.C. Cir. 1997).

37. An agency's action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). A federal agency's interpretation of its own regulation is not entitled to deference where the agency's action "is plainly erroneous or inconsistent with the regulation." *Bergamo v. Commodity Futures Trading Comm'n,* 192 F.3d 78, 79-80 (2d Cir. 1999).

38. Here, the SBA has acted in contradiction to the CARES Act as to the Emergency Grant procedure. It has not promulgated any rules that are applicable to this process. Neither the law nor any rule, nor any other authority, support the SBA's position that it may use its discretion. Rather, the law expressly provides that it is based upon the amount requested by the applicant up to $10,000, provides for self-certification and the amount requested to be paid within 3 days. Nothing in the law nor congressional intent reflect that that the SBA can utilize its discretion as to the amount of the Emergency Grants.

39. **Irreparable Harm –** The SBA has not addressed any of the facts asserted by the Plaintiff as to irreparable harm. Rather, it argues that the Plaintiff did not provide any "estimate as to the number of weeks or months it can sustain with and without an Advance." See Opposition p. 11, l. 18-21. The SBA addressed this factor in two sentences and does not appear to put much

weight in such argument. The Plaintiff painstakingly discussed the factual scenario and his irreparable harm. The Plaintiff has suffered and is continuing to suffer irreparable harm. The obliteration of a business, the loss of good will and the eventual loss of such businesses constitute irreparable injury to the Plaintiff. *In Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc*., 736 F.3d 1239, 1250 (9th Cir. 2013). ("[e]vidence of loss of control over business reputation and damage to goodwill [can] constitute irreparable harm," so long as there is concrete evidence in the record of those things.). See also, *Carlo C. Geraldi Corp v. Miller Brewing Co*. 421 F. Supp. 233, 236 (D.N.J. 1976). As stated within Mr. Pehrson's declaration, irreparable harm has been proven.

40. **Balance of Hardships** – The SBA has created its own conflict by creating an internal policy of limiting the Emergency Grants. The Plaintiff agrees that the "Executive and Legislative branches quickly responded to the COVID-19 crisis." However, as to Emergency Grants, the SBA has not moved quickly and created internal policies that conflict with the law. Remarkably, the SBA failed to implement the Emergency Grant procedure until April 7, 2020 and by April 16, 2020 already had over 3.79 applications and now has approximately 5.4 million applications. See, Doc 15-4 paragraph 7 and 8. The hardship that the Plaintiff (along with the millions of other small businesses) now suffers is not of its own doing. This financial crisis was caused by COVID-19 but the failure of the SBA to properly comply with the law could likely result in the closing of its business. The hardship factor weighs heavily in favor of the Plaintiff.

41. **Advancement of the Public Interest -** The Plaintiff argues that it is in the public interest for the SBA to comply with the law. On the other hand, the SBA appears to argue that it is her "discretion" to provide proportional advances to as many small businesses as possible" is in the

public interest.[4]  See, Opposition p. 12, l. 11-1.  However, it was the Congressional Intent to "save business" by providing the $10,000 Emergency Grant within 3 days.  There is no evidence that providing an advance based upon the number of employees saves a small business.  Conversely, Congressman Deutch stated that "[r]eceiving the $10,000 payment can keep a business from permanently closing"  See, Doc 6-3, p. 58-59.

42. Whether a proportional advance saves small business is an interesting experiment and hypothetical.  However, in this real-life situation, the SBA failed.  The SBA did not begin processing applications until April 7, 2020 and by April 16, 2020 already had over 3.79 applications and now has approximately 5.4 million applications. See, Doc 15-4, p. 1 paragraphs 7-8.  As the unemployment within the United States has skyrocketed, one must wonder if the SBA's decision to ignore and/or purposefully create internal policies in violation of the law as applicable to the Emergency Grant procedure was part of the cause not the solution.

43. Section 634(b)(1) of the Small Business Act restricts the availability of injunctive relief against the SBA. Section 634(b)(1) states that the SBA may sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy; but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the [agency] or [its] property[.] 15 U.S.C. § 634(b)(1). Other circuits are split on how to interpret Section 634(b)(1). Some courts have interpreted it to preclude all

---

[4] The SBA's position is similar to the ethical dilemma within the trolly experiment. Through this experiment, one was forced to determine if they should do nothing and allow five people to be killed and save one person versus killing one person and saving five.  Or by analogy, give small businesses a little bit of money so they can live an extra day at the expense of others.  Congress and the President, for better or worse, make that decision.  That decision was to try to save 2 million small businesses by providing 20 Billion Dollars and authorizing the Emergency Grant Procedure.   Congress openly invited the SBA to request additional funds.

injunctive relief against the SBA, see, e.g., *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1290 (5th Cir. 1994). However, other Courts have held that section 634(b)(1) does not necessarily bar injunctions against the SBA in all circumstances. See, *Ulstein Mar., Ltd. V. United States*, 833 F. 2d 1052, 1056-57 (1st Cir. 1987).

44. Under 9th Circuit law, the Plaintiff is not barred by the "no injunction" provision if the Administrator acted outside the scope of her authority. See, *California Cosmetology Coalition v. Riley*, 110 F.3d 1454, 1461 (9th Cir. 1997) (affirming a grant of a preliminary injunctive relief where the plaintiff alleged that the Secretary exceeded his authority in implementing and applying DOE regulations). See, Valley Forge Flag Company v. Kleppe, 506 F.2d, 234 245 (D.C. Cir. 1972) and *DRG Funding Corp. v. Sec'y. of Housing and Urban Dev.*, No. 88-2202, 1988 WL 90107, *3 (D.D.C. 1988) (concluding that the plaintiff could pursue its claim because the decision in Kleppe "appeared to indicate that . . . anti-injunctive provisions do not apply when the agency has acted outside of its statutory authority"); see also *Ricks v. United States*, 434 F. Supp. 1262, 1272 (D.C. Ga. 1976) (noting the decision in Kleppe and stating that it would be "a harsh construction to interpret [§ 634(b)(1)] literally with the result that it deprive[d] [the plaintiff] of his only effective remedy (an injunction)."). The Supreme Court stated in *Manhattan Gen Equip Co. v. Commissioner*, 297 U.S. 129, 134 (1936):

> The power of an administrative officer or board to administer a federal statute and to prescribe rules and regulations to that end is not the power to make law, for no such power can be delegated by Congress, but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. A regulation which does not do this but operates to create a rule out of harmony with the statute, is a mere nullity.
>
> Citing to, *Lynch v. Tilden Produce Co.,* 265 U.S. 315, 320-322 (1924) and *Miller v. United States*, 294 U.S. 435, 439-44 (1935).

45. Here, the Administrator promulgated an internal procedure which is violative of Emergency Grant Process and that the $1,000.00 per employee limitation is violative of such act. As stated in a prior footnote within the Motion, at its simplest terms, the Plaintiff is requesting the Court to order the SBA to follow the law.

## VIII.   CONCLUSION

The President and the Congress, by implementing the Emergency Grant process were being our leaders. Leaders are to quickly and succinctly communicate both good and bad news. Some of our leaders communicate better than others. Some leaders try to implement procedures which they believe is fair and equitable but are in contravention of the law. Robin Hood was a leader of the poor. He stole money from the rich to give to the poor. However, he also did not follow the law. The Plaintiff is requesting this Court to issue an order requiring the SBA to follow the law as applicable to Emergency Grants.

DATED     4-30-2020            /s/ Brian D. Shapiro, Esq.
                               Brian D. Shapiro, Esq.
                               PRO BONO Attorney for LIT VENTURES, LLC

## CERTIFICATE OF SERVICE

On April 30, 2020, the foregoing **REPLY TO OPPOSITION TO EMERGENCY MOTION APPLICATION FOR WRIT OF MANDAMUS OR IN THE ALTERANTIVE FOR A TEMPORARY RESTRAING ORDER/PRELIMINARY INJUNCTION** was electronically filed and served on Defendant's counsel of record via the United States District Court for the District of Nevada CM/ECF system.

DATED   4-30-2020        */s/ Brian D. Shapiro, Esq.*
                         Brian D. Shapiro, Esq.
                         PRO BONO Attorney for LIT VENTURES, LLC