# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| LIT Ventures, LLC,<br><br>　　　　Plaintiff<br><br>v.<br><br>Jovita Carranza, as Administrator to the United States Small Business Administration,<br><br>　　　　Defendant | Case No.: 2:20-cv-00706-JAD-DJA<br><br>**Order Denying Emergency Motion or Application and Requiring Ventures to Show Cause Why this Petition Should Not Be Dismissed**<br><br>[ECF No. 6] |

Millions of American workers and businesses have been hobbled by the COVID-19 global pandemic. To help them weather this economic crisis, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act).[1] At issue in this petition for writ of mandamus is the emergency grant or advance that the CARES Act allows a business to seek when applying to the Small Business Administration (SBA) for an Economic Injury Disaster Loan (EIDL) in response to COVID-19.[2] Congress has authorized twenty billion dollars to be appropriated to the SBA for it to provide emergency grants under this feature of the CARES Act.[3]

LIT Ventures, LLC alleges that it applied to the SBA for an EIDL under 15 U.S.C. § 636(b)(2), requested an emergency grant of $10,000 under the CARES Act, and submitted the required certification that it was eligible for that relief.[4] Ventures contends that the CARES Act

---

[1] 15 U.S.C. § 9001–9080.

[2] ECF No. 1 (petition).

[3] 15 U.S.C. § 9009(e)(7). Congress uses the terms "grant" and "advance" interchangeably in the CARES Act when referring to the emergency EIDL funds.

[4] ECF No. 1 at ¶¶ 62, 67.

requires the SBA to fund an emergency grant within three days of receiving a business's request for that relief along with an EIDL application and self-certification of eligibility, and to pay whatever amount a business seeks for the grant up to $10,000.[5]  Although the SBA confirmed receipt of Ventures' EIDL application, it did not fund the requested emergency grant within three days or even at all.[6]  Ventures thus sues SBA Administrator Jovita Carranza, petitioning for a writ of mandamus or, alternatively, an injunction or declaration compelling the SBA to discharge its duties under the CARES Act to fund emergency grants.[7]

Ventures also moves on an emergency basis for a writ of mandamus or, alternatively, a temporary restraining order or preliminary injunction to the same effect as its petition.[8]  I am not satisfied that Ventures has discharged its heavy burden to obtain any of these extraordinary remedies.  Rather, I find that the plain language of the CARES Act and the statutes that empower the SBA and its Administrator afford the SBA some discretion when making emergency grants.  I am not persuaded that the SBA's duty to fund those grants in the amount requested up to $10,000 and within three days is so plainly prescribed by the CARES Act as to be free from doubt.  I therefore deny Ventures' emergency motion and order it to show cause why this petition should not be dismissed for lack of jurisdiction and mootness.

---

[5] *Id.* at ¶ 84.

[6] *Id.* at ¶ 71.  The SBA explains in its response that Ventures' application has been held in abeyance pending the outcome of a referral by the SBA's Office of General Counsel to SBA's Office of Inspector General based on contradictory sworn statements by Ventures' owner about the number of persons who are employed by that company.  ECF No. 15 at 2, n.2.

[7] ECF No. 1 at ¶¶ 81–91 (first claim for writ of mandamus), ¶¶ 92–96 (second claim, in the alternative, for injunctive relief), ¶¶ 97–99 (third claim, in the alternative, for declaratory relief).

[8] ECF Nos. 6 (emergency motion), 12 (supplement).  I expedited the briefing on Ventures' emergency motion, ECF No. 7 (order setting briefing schedule), and that motion is now fully briefed.  ECF Nos. 15 (response), 16 (errata to response), 17 (reply).

**A.     Legal standards**

*1.     Writ of mandamus*

The federal mandamus statute invests district courts with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."[9] "The writ of mandamus is a 'drastic and extraordinary' remedy [that is] 'reserved for really extraordinary causes.'"[10] Because they are extraordinary remedies, mandamus writs "are appropriate only when a federal officer, employee, or agency owes a nondiscretionary duty to the plaintiff that is 'so plainly prescribed as to be free from doubt.'"[11] Thus, mandamus may be granted only when the petitioner demonstrates that (1) its right to that relief is "clear and certain[,]" (2) the agency or officer's "duty is 'ministerial and so plainly prescribed as to be free from doubt[,]'" "and (3) no other adequate remedy is available."[12] And "[t]he extraordinary remedy of mandamus lies within the discretion of the trial court, even if the three elements are satisfied."[13]

*2.     Preliminary injunction and temporary restraining order*

Like the writ of mandamus, "[a] preliminary injunction is an extraordinary remedy never awarded as of right."[14] The legal standard for issuing a temporary restraining order is

---

[9] 28 U.S.C. § 1361.

[10] *In re Van Dusen*, 654 F.3d 838, 840 (9th Cir. 2011) (quoting *Ex parte Fahey*, 332 U.S. 258, 259–60 (1947)).

[11] *Stang v. I.R.S.*, 788 F.2d 564, 565 (9th Cir. 1986) (quoting *Pescosolido v. Block*, 765 F.2d 827, 829 (9th Cir. 1985)).

[12] *Or. Nat. Res. Council v. Harrell*, 52 F.3d 1499, 1508 (9th Cir. 1995) (quoting *Fallini v. Hodel*, 783 F.2d 1343, 1345 (9th Cir. 1986)).

[13] *Id.* (citing *Fallini*, 783 F.2d at 1345).

[14] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

"substantially identical" to the standard for issuing a preliminary injunction.[15] The Supreme Court clarified the standard for these forms of equitable relief in *Winter v. Natural Resources Defense Council, Inc.*, instructing that the plaintiff "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest."[16] The last two factors "merge when the Government is the opposing party."[17]

But a plaintiff who seeks a mandatory injunction—one that goes beyond simply maintaining the status quo during litigation—bears a "doubly demanding" burden: "[it] must establish that the law and facts *clearly favor* [its] position, not simply that [it] is likely to succeed."[18] "The status quo means the last, uncontested status [that] preceded the pending controversy."[19] The Ninth Circuit has cautioned that mandatory injunctions are "particularly disfavored" and "should not issue in doubtful cases."[20] "When the effect of a mandatory injunction is the equivalent of mandamus, it is governed by the same standard."[21]

**B.  Discussion**

Ventures argues that the SBA's duty when addressing an EIDL applicant's request for an emergency grant is clear: consider only eligibility by relying solely on the applicant's self-

---

[15] *See Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (stating that the "analysis is substantially identical for the injunction and the TRO").

[16] *Winter*, 555 U.S. at 20; *accord Herb Reed Enterprises, LLC v. Fla. Entertainment Mgmt., Inc.*, 736 F.3d 1239 (9th Cir. 2013).

[17] *Nken v. Holder*, 556 U.S. 418, 435 (2009).

[18] *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc).

[19] *Id.* at n.4 (internal citation and quotation marks omitted).

[20] *Id.* (internal citations and quotation marks omitted).

[21] *Harrell*, 52 F.3d at 1508 (citing *Fallini*, 783 F.2d at 1345).

4

certification and then disburse any amount requested by the applicant (up to $10,000) within three days.[22]  Ventures reaches this conclusion after quoting a few choice phrases from the CARES Act and recounting page upon page of public statements that lawmakers and the SBA have made in the wake of the Act's passage.[23]  But statutory interpretation, as the Supreme Court always says, "begins with the text"[24] and "[w]here the statute's language is plain, [courts] do not consider 'the legislative history or any other extrinsic material.'"[25]  And here, my analysis begins and ends with the relevant statutory text.

The emergency-grant piece of the CARES Act is contained in eight paragraphs under subsection (e) of 15 U.S.C. § 9009.[26]  Only the first five paragraphs of subsection (e) are relevant here.  The first paragraph states that,

> [d]uring the covered period, an entity included for eligibility in subsection (b) . . . that applies for a loan under [15 U.S.C. § 636(b)(2)] in response to COVID-19 may request that the Administrator provide an advance that is, subject to paragraph (3), in the amount requested by such applicant to such applicant within 3 days after the Administrator receives an application from such applicant.[27]

The second paragraph states that, before funding an emergency grant, the Administrator must "verify that the applicant is an eligible entity by accepting a self-certification from the applicant under penalty of perjury pursuant to section 1746 of Title 28."[28]  The third paragraph instructs

---

[22] ECF No. 6 at 20.

[23] *Id.* at 5–11.

[24] *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016).

[25] *U.S. ex re. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121, 1128 (9th Cir. 2015) (quoting *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1042 (9th Cir. 2013) (en banc) (internal quotation marks omitted)).

[26] 15 U.S.C. § 9009(e).

[27] *Id.* at § 9009(e)(1).

[28] *Id.* at § 9009(e)(2).

that "[t]he amount of an advance provided under this subsection shall be not more than $10,000."[29]  The fourth paragraph lists the allowable uses to which an applicant can put emergency advance funds.[30]  And the fifth paragraph instructs that an applicant "shall not be required to repay any amounts on an advance provided under [15 U.S.C. § 9009(e)], even if subsequently denied a loan under section 636(b)(2) of this title."[31]

      I cannot conclude that the language of the CARES Act prescribes a mandatory, ministerial duty on the part of the SBA to fund an EIDL applicant's request for an emergency grant in any amount requested up to $10,000 and within three days of the request after considering only the applicant's self-certification of eligibility.  The first paragraph, which does most of the heavy lifting for the emergency grant, is not even directed to the SBA.  It tells an applicant what it may do when applying for an EIDL in response to COVID-19: ask the SBA to provide it an advance within three days of receiving the EIDL application.

      Ventures reads the CARES Act in a vacuum, but it does not stand alone.  The CARES Act is an extension of powers that Congress has already granted to the SBA and its Administrator—most particularly for the emergency grant, the power to make and administer EIDLs.  In that regard, Congress empowered the SBA "to make such loans . . . as the Administration may determine to be necessary or appropriate to any small business concern . . . located in an area affected by a disaster . . . if the Administration determines that the concern . . . has suffered a substantial economic injury as a result of such disaster . . . ."[32]  "'May' is a permissive word, and [courts] will construe it to vest discretionary power absent a clear

---

[29] *Id.* at § 9009(e)(3).
[30] *Id.* at § 9009(e)(4).
[31] *Id.* at § 9009(e)(5).
[32] *Id.* at § 636(b)(2).

6

indication from the context that Congress used the word in a mandatory sense."[33] The context of this statute does not contain a clear indication that Congress intended to use "may" in a mandatory sense. Congress therefore granted the SBA discretion to determine what EIDLs were "necessary and appropriate." When the CARES Act is read in conjunction with this statute, it is plain that the SBA enjoys the same discretion when making emergency grants that Congress, with the CARES Act, included within the EIDLs purview.[34]

This is not to say that the SBA enjoys unlimited discretion when making emergency grants under the CARES Act. Ventures contends that the SBA has determined that it will fund emergency grants only when an applicant is approved for an EIDL. The SBA does not have discretion to fund emergency grants in that manner under the plain language of the CARES Act,[35] but that is a distinction without a difference here because Ventures offers only speculation to show that this practice is occurring, and the SBA offers evidence to show that this is not how it is processing the emergency grants.[36] There is no dispute that the SBA has decided to limit the emergency grants to $1,000 for each person that the applicant employs, up to the $10,000

---

[33] *Fernandez v. Brock*, 840 F.2d 622, 632 (9th Cir. 1988).

[34] *See* 15 U.S.C. § 9009(e)(1) (only an eligible entity "that applies for a loan under section 363(b)(2) of this title in response to COVID-19 may request that the Administrator provide an advance").

[35] *C.f. id.* at § 9009(e)(5) (instructing that emergency grant funds do not have to be repaid even if the applicant is "subsequently denied a loan under section 636(b)(2)").

[36] *See* ECF Nos. 16-1 at 2–3 (declaration of Tami Perriello, Chief Financial Officer of the SBA, explaining that "the manner in which EIDL advance grant requests" are "verified and approved before being provided to [her] office for direction of disbursement" is "prescribed" in an April 7, 2020, memorandum from Kimberly Butler, the Director of the SBA's Office of Grants Management"), 15-2 at 5–6 (Butler's memorandum), 15-4 at 2, ¶ 10 (declaration of Eric Wall, Senior Loan Officer for the SBA, who declares that "[e]very day, seven days a week, the computer system sends lists of approved advance grant applications to the SBA's [CFO] for directing disbursement of those advance grants.").

statutory maximum,[37] so, for example, a one-employee business will receive just $1,000 in emergency-grant funds. Also undisputed is the fact that the SBA has not funded emergency grants within three days of receiving applications.[38] These decisions,[39] however, fall within the SBA's discretion to determine which requests are "necessary or appropriate."[40] They are also encompassed by the Administrator's power to "take any and all actions" that she "determines . . . are necessary or desirable in making loans" under 15 U.S.C. § 363(b)(2).[41]

The upshot of the plain language of the CARES Act and the statutes that empower the SBA and its Administrator is that the SBA enjoys some discretion when making emergency EIDL grants and the SBA does not have a mandatory duty to fund those grants in any amount requested up to $10,000 and within three days.[42] Because the CARES Act does not create a mandatory, ministerial duty to make emergency grants in the manner that Ventures pleads, mandamus relief is unavailable. So, too, is the alternative mandatory injunction that Ventures seeks because that request is held to the same standard.[43] Ventures' requests for injunctive relief

---

[37] *See* ECF No. 15-2 at 6 (Butler's memorandum).

[38] *See* ECF No. 15-4 at 1–2, ¶¶ 7–11 (Wall's declaration).

[39] Based on this record, timing of funding is more likely the consequence of decisions rather than a decision itself.

[40] *See* 15 U.S.C. § 636(b)(2).

[41] 15 U.S.C. at § 634(b)(7) (empowering the Administrator to "take any and all actions . . . when [s]he determines such actions are necessary or desirable in making, servicing, compromising, modifying, liquidating, or otherwise dealing with or realizing on loans made under the provisions of" Chapter 14A of Title 15); *see also id.* at § 634(b)(6) (the Administrator's powers include the ability to "make such rules and regulations as [the Administrator] deems necessary to carry out the authority vested in h[er] by or pursuant to" Chapter 14A of Title 15).

[42] Because my determination turns on the issue of the SBA's discretion in making emergency grants, I need not and do not reach the Administrator's other arguments against jurisdiction and the merits of the remedies that Ventures seeks.

[43] *See, e.g.*, ECF No. 1 at ¶¶ 94–96 (alleging that the court "may compel the SBA to conform to the CARES Act as applicable to Emergency Grants" by "prohibiting the SBA from creating internal guidelines [that] violated the CARES Act as it applies to the Emergency Grant"); *see*

or a temporary restraining order fail in any event because it cannot demonstrate—as it must—that it is likely to succeed on the merits, let alone that the law and facts clearly favor its position.

### Conclusion

IT IS THEREFORE ORDERED that Ventures' Emergency Motion Application for Writ of Mandamus or in the Alternative for Temporary Restraining Order/Preliminary Injunction **[ECF No. 6] is DENIED**.

IT IS FURTHER ORDERED that Ventures must show cause in writing **by June 4, 2020**, why this petition should not be dismissed for lack of jurisdiction as to mandamus relief and mootness as to the alternative requests for injunctive and declaratory relief.  Defendant will then have ten days to file a response.

_____
U.S. District Judge Jennifer A. Dorsey
May 5, 2020

---

*also Harrell*, 52 F.3d at 1508 (mandamus standard applies to mandatory injunctions that mirror mandamus relief).